**CASE NO. 23-4**

# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

STEPHEN COREY BRYANT,

*Petitioner-Appellant,*

v.

BRYAN P. STIRLING, Commissioner, South Carolina
Department of Corrections; LYDELL CHESTNUT, Deputy Warden,
Broad River Road Correctional Institution Secure Facility,

*Respondents-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT BEAUFORT

## REPLY BRIEF OF APPELLANT

John G. Baker
FEDERAL PUBLIC DEFENDER
FOR THE WESTERN DISTRICT
OF NORTH CAROLINA

Gretchen L. Swift
Laura K. McCready
Assistant Federal Public Defenders
129 West Trade Street, Suite 300
Charlotte, NC 28202
704-374-0720
Gretchen_Swift@fd.org
Laura_McCready@fd.org

E. Charles Grose, Jr.
GROSE LAW FIRM, LLC
305 Main Street
Greenwood, SC 29646
864-538-4466
charles@groselawfirm.com

*Counsel for Appellant*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION .............................................................................1

ARGUMENT...................................................................................2

I.   Procedural default does not apply because the rules the
state court relied upon to bar relief were inadequate to
support the judgment and dependent on federal law ................... 2

   A.   The state has not met its burden of showing that
Bryant's proposed amendment was barred by an
adequate procedural rule ........................................................ 2

   B.   The state-court ruling depended on federal law
because the PCR court had to interpret *Atkins* to
determine whether Bryant's amendment was allowed ............ 4

II.   This Court should remand to the district court for a *de
novo* adjudication of whether Bryant's FASD renders him
constitutionally ineligible to be executed ....................................... 7

   A.   The federal courts must decide the merits question
*de novo* ..................................................................................... 7

   B.   Supreme Court precedent requires further inquiry,
beyond IQ scores, to determine whether Bryant's
FASD renders him ineligible for execution under
*Atkins* ...................................................................................... 8

   C.   The district court has the power to hold an
evidentiary hearing ............................................................... 11

i

# TABLE OF AUTHORITIES

## Cases

*Atkins v. Virginia,*
536 U.S. 304 (2002) ................................................................ 2

*Barr v. City of Columbia,*
378 U.S. 146 (1964) ................................................................ 2

*Bostick v. Stevenson,*
589 F.3d 160 (4th Cir. 2009) ................................................ 8

*Busby v. Davis,*
925 F.3d 699 (5th Cir. 2019) ................................................ 5

*Foster v. Chatman,*
578 U.S. 488 (2016) ................................................................ 5

*Grayson O Co. v. Agadir Int'l LLC,*
856 F.3d 307 (4th Cir. 2017) ................................................ 4

*Hall v. Florida,*
572 U.S. 701 (2014) ............................................................... 10

*Hathorn v. Lovorn,*
457 U.S. 255 (1982) ................................................................ 2

*James v. Kentucky,*
466 U.S. 341 (1984) ................................................................ 2

*Williams v. Taylor,*
529 U.S. 420 (2000) .............................................................. 12

*Winston v. Pearson,*
683 F.3d 489 (4th Cir. 2012) ................................................ 7

*Woods v. State,*
No. 2019-MO-044, 2019 WL 6898088 (S.C. Dec. 18, 2019) .................. 3

## Statutes

28 U.S.C. § 2254 ....................................................... 6, 7, 8, 11, 12

## Other Authorities

Christopher Fanning, *Defining Intellectual Disability:*
*Fetal Alcohol Spectrum Disorders and Capital Punishment*,
  38 Rutgers L. Rec. 97 (2011)......................................................................... 9

## INTRODUCTION

The Supreme Court has repeatedly recognized that, as medical knowledge grows, so too will our understanding of whose execution violates the Eighth Amendment under *Atkins v. Virginia*. Precedent therefore requires that courts making eligibility determinations under *Atkins* look to scientific standards to interpret IQ scores and to determine whether a defendant has the extreme culpability required for his execution to comport with the Constitution.

Stephen Corey Bryant's case demonstrates why that was a wise approach. In the decades since *Atkins* was decided, the medical community has discovered that—in a case like Bryant's—IQ scores fail to capture the brain impairments caused by prenatal exposure to alcohol. In fact, experts agree that, although Bryant's IQ score is marginally above the traditional range for an intellectual disability diagnosis, his Fetal Alcohol Spectrum Disorder (FASD) causes Bryant to suffer cognitive, adaptive, and neurodevelopmental deficits that are functionally indistinguishable from intellectual disability. The state's brief, with its rigid focus on IQ scores, fails to address this medical consensus at the heart of Bryant's claim.

This Court should remand to the district court for consideration of whether Bryant lacks the extreme culpability necessary for his execution to satisfy the Eighth and Fourteenth Amendments.

1

# ARGUMENT

## I. Procedural default does not apply because the rules the state court relied upon to bar relief were inadequate to support the judgment and dependent on federal law.

### A. The state has not met its burden of showing that Bryant's proposed amendment was barred by an adequate procedural rule.

Bryant argues that there were no adequate state rules forbidding the amendment of his PCR application to include his FASD-based claims under *Atkins v. Virginia*, 536 U.S. 304 (2002), and that the doctrine of procedural default therefore does not apply. Op. Br. 23-31. To invoke the doctrine of procedural default, the state bears the burden of proving that a "firmly established and regularly followed state practice" foreclosed state-court relief. *James v. Kentucky*, 466 U.S. 341, 348 (1984). The federal courts need not decide how South Carolina's rules about the amendment of successive PCR applications should apply to Bryant's claim. Instead, the question is whether the state has proven that the rules the PCR court relied upon to preclude relief are "strictly or regularly followed." *Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982) (quoting *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964)). Far from making such a showing, the state neither identifies a well-established rule forbidding the amendment of a successive PCR application, nor points to any other instance in which such

an amendment has been denied under the procedural rules cited by the PCR court.

Moreover, the state's brief underscores the uncertain limits of the exception to South Carolina's bar on successive and untimely PCR applications raising an applicant's ineligibility for execution. The South Carolina Supreme Court has found a successive and untimely PCR application "permissible because of extraordinary circumstances" when "there is a possibility the Constitution categorically bars Petitioner's execution." *Woods v. State*, No. 2019-001713, 2019 WL 6898088, at *1 (S.C. Dec. 18, 2019) (per curiam). By its plain text, this exception encompasses Bryant's claim that the Constitution categorically bars his execution because of his FASD. The state concedes that an exception for *Atkins* claims "appears to be forming." Res. Br. 42. It goes on to emphasize that the best authority for the exception is an unpublished opinion by a narrow majority and concludes that "the exception is weak." Res. Br. 43. The state insinuates that the novelty and unsettled nature of this exception support the state's claim of procedural default. The opposite is true. The existence of an emerging exception to the bar on successive and untimely PCR applications—an exception whose breadth remains uncertain by the

3

state's own admission[1]—demonstrates that no "strictly or regularly followed" state-court procedural rule prevented Bryant from pressing his FASD-based *Atkins* claim.

### B. The state-court ruling depended on federal law because the PCR court had to interpret *Atkins* to determine whether Bryant's amendment was allowed.

The district court correctly concluded that the PCR court's refusal to allow Bryant's proposed amendment necessarily depended on an analysis of federal law, and that the doctrine of procedural default therefore does not apply. JA1157-1159. In its brief, the state does not develop an argument that the district court erred in this conclusion, choosing not even to include the applicable legal standards. The argument that that state-court procedural ruling was independent of federal law is therefore waived. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (internal punctuation omitted)). Bryant nevertheless briefly addresses this facet of the district court's holding.

---

[1] Recall that, even after Bryant's successive PCR application was dismissed, the state filed a certiorari petition identifying several cases in which this exception had been applied and requesting that the South Carolina Supreme Court clarify its limits "in order to guide the lower court in the proper consideration of similar cases." JA865.

The failure to comply with a state procedural rule bars federal habeas relief only if the state rule is completely independent of federal law. *See Foster v. Chatman*, 578 U.S. 488, 497 (2016). For procedural default to apply, state law must entirely underpin the state-court decision; procedural default cannot apply when the state law determination is "entirely dependent on," "resting primarily on," or even merely "influenced by" a question of federal law. *Id.* at 499 n.4.

As discussed above, South Carolina courts allow successive PCR applications raising *Atkins* claims, and Bryant's amended PCR application would have alleged that he was categorically exempt from execution under the Eighth and Fourteenth Amendments because he suffered from a condition functionally equivalent to an intellectual disability. JA521-522. By refusing to allow the amendment, the PCR court necessarily determined that intellectual disability only, and not a functionally equivalent condition, exempts a petitioner from execution. As the district court recognized, JA1157-1159, that is plainly a conclusion of federal constitutional law. *See Busby v. Davis*, 925 F.3d 699, 706-07 (5th Cir. 2019).

Moreover, the record demonstrates that the parties and the PCR court understood themselves to be debating a question of federal law. In the hearing on Bryant's motion to amend his petition, the parties and the PCR

5

court discussed at length the holding in *Atkins*, the meaning of intellectual disability, and whether FASD exempts a petitioner from execution. *See, e.g.*, JA583 (the state arguing that an "*Atkins* claim is a claim of mental retardation now known as intellectual disability. It is not a group of conditions. It is a specific condition . . ."); JA579-580 (PCR counsel arguing that FASD is consistent with an *Atkins* claim).

The state's brief itself illustrates that it is necessary to interpret the *Atkins* line of cases to assess whether Bryant's amended claim falls under the state-court exception to successive and untimely PCR applications. In its response to Bryant's argument about the inadequacy of the state procedural rules, the state insists that the exception to the relevant rules exists only for intellectual disability because "[n]o other condition *can* satisfy the logic expressed [by the State Supreme Court] if *Atkins* is faithfully applied." Res. Br. 43. Deciding what makes a faithful application of *Atkins* plainly requires the interpretation of federal law.[2]

---

[2] Since the state's argument about why the state procedural rules apply to Bryant's proposed amendment assumes state-court interpretation of federal law, and the state also concedes that the PCR court's ruling was not a decision on the merits under 28 U.S.C. § 2254(d), *see infra* Section II(A), this Court need not rule on the adequacy of the procedural rules to conclude that procedural default does not apply and that the federal courts can address the merits question *de novo*.

6

Because the district court correctly found that the PCR court's refusal to allow Bryant's proposed amendment depended in part on federal law, the doctrine of procedural default does not apply.

## II.    This Court should remand to the district court for a *de novo* adjudication of whether Bryant's FASD renders him constitutionally ineligible to be executed.

### A.    The federal courts must decide the merits question *de novo*.

In reviewing the PCR court's handling of Bryant's FASD-based *Atkins* claim, the district court construed the PCR court's decision as an adjudication on the merits and applied the highly deferential standard of review of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). JA1159-1160. Under AEDPA, a federal court reviewing a claim that was "adjudicated on the merits" in state court can grant relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(1) and (2). But when a claim was not adjudicated on the merits in state court, "AEDPA deference is inappropriate and a federal court must review the claim de novo." *Winston v. Pearson*, 683 F.3d 489, 496 (4th Cir. 2012).

7

In his opening brief, Bryant argues that the district court erred by construing the PCR court's decision as an adjudication on the merits for AEDPA purposes, because the PCR court refused to allow Bryant to fully develop the facts about his FASD or its functional equivalence with intellectual disability, and judgment on a materially incomplete record is not an adjudication on the merits for purposes of AEDPA. *See* Op. Br. 32-36. The state in its response brief does not argue that the standards of 28 U.S.C. § 2254(d) apply, and in fact concedes that the FASD-based *Atkins* claim was "not ruled upon on the merits" in state court. Res. Br. 2. The state has therefore relinquished any claim to AEDPA deference.

It is now up to the federal courts to consider *de novo* whether Bryant's FASD renders him ineligible for execution under the Eighth Amendment. *See Bostick v. Stevenson*, 589 F.3d 160, 163 (4th Cir. 2009) ("[W]here the state courts did not reach the claim's merits and instead ruled on procedural grounds, we review the claim de novo.").

**B.    Supreme Court precedent requires further inquiry, beyond IQ scores, to determine whether Bryant's FASD renders him ineligible for execution under *Atkins*.**

Much of the state's brief is devoted to arguing that people with FASD can have IQ scores that are above the traditional intellectual disability range. That much is not in dispute. Throughout this FASD litigation—in the

8

state court, the district court, and his opening brief—Bryant has been forthright that he was not diagnosed with intellectual disability because of his documented IQ scores between 79 and 93. JA528; JA660; Op. Br. 8.

With its rigid focus on IQ scores, the state ignores the key points presented by the amicus and the experts who evaluated Bryant. Current medical consensus establishes that (1) IQ scores do not adequately capture the impairment caused by FASD, and (2) FASD like Bryant's is functionally equivalent to intellectual disability. Op. Br. 12-17; Am. Br. 4-11; JA534-538. There is no evidence in the record contradicting this medical consensus.

The state fails to address, or even acknowledge, the medical understanding that IQ scores fail to capture the brain impairments caused by prenatal exposure to alcohol. For example, the state quotes a law review article for the point that "a person afflicted with FASD may still score within the average range on IQ tests." Res. Br. 47 (quoting Christopher Fanning, *Defining Intellectual Disability: Fetal Alcohol Spectrum Disorders and Capital Punishment*, 38 Rutgers L. Rec. 97, 107 (2011)). The state fails, however, to mention that the very same article discusses the inability of IQ tests to measure the impairments caused by FASD, or that it makes same essential points underlying Bryant's claim: "Due to the potentially misleading nature of IQ scores in people with FASD, the states

that have set an IQ cut-off point within their definition of mental retardation will have left some individuals exposed to capital punishment despite a legitimate intellectual disability." Fanning, *supra*, at 107-08.

In short, the state insists—as did the PCR court—that Bryant's IQ scores end the *Atkins* inquiry. But Supreme Court case law makes clear that "it is proper to consider the psychiatric and professional studies that elaborate on the purpose and meaning of IQ scores to determine how the scores relate to the holding of *Atkins*." *Hall v. Florida*, 572 U.S. 701, 709-710 (2014). The only relevant record evidence shows that, because of Bryant's FASD, his IQ scores underestimate his deficits and therefore inflate his culpability. By ignoring this evidence, the PCR court's decision violated the holdings of *Atkins* and *Hall*.[3]

---

[3] The state also argues that Bryant waived his Eighth Amendment claim by failing to present a "proper Eighth Amendment analysis," by which the state means an analysis based on legislative support rather than medical expertise. Res. Br. 37, 45-46. But Bryant is not, as the state suggests, arguing for a new categorical exemption to execution for FASD patients. Instead, Bryant claims that—in his individual case—the impairments caused by FASD are identical to intellectual disability, and that he is therefore exempt from execution under the existing frameworks of *Atkins* and *Hall*. *See* Op. Br. 36-44.

**C.    The district court has the power to hold an evidentiary hearing.**

Aside from the issue on which the district court granted a Certificate of Appealability, the state also argues that Bryant's "request to return to district court for a ruling is moot as there could be no ruling on the state court record," Res. Br. 37, and that 28 U.S.C. § 2254(e) prevents Bryant from presenting evidence of his FASD and its equivalence with intellectual disability in the district court, Res Br. 50-52.[4]

Bryant agrees that—due to the PCR court's refusal to admit evidence about Bryant's FASD and its equivalence with intellectual disability—an adjudication on the merits was impossible on the state-court record and remains so. But nothing prevents the district court from curing that problem. AEDPA imposes limits on a federal court's ability to hold an evidentiary hearing only if a prisoner "has failed to develop the factual basis of a claim in State court." 28 U.S.C. § 2254(e). Importantly here, a petitioner has not failed to develop the record, and is therefore excused from the requirements of 28 U.S.C. § 2254(e), when "there has been no lack

---

[4] The necessity and propriety of an evidentiary hearing are issues that should be addressed in the first instance by the district court, but Bryant briefly addresses the state's argument that his request to return to the district court is moot.

11

of diligence at the relevant stages in the state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

Bryant was diligent in his efforts to develop the facts supporting his FASD-based *Atkins* claim, offering expert affidavits and testimony showing that Bryant's FASD causes cognitive, adaptive, and neurodevelopmental deficits that are functionally indistinguishable from intellectual disability. *See, e.g.*, JA534-538. As the state acknowledges, Res. Br. 48 n.14, the PCR court refused to accept any proffered evidence that did not directly relate to a diagnosis of intellectual disability. *See, e.g.*, JA416 (PCR court discounting Dr. George Woods' testimony because it believed it was "clouded by a push to accept a 'functional equivalent' of Intellectual Disability in another condition"). The requirements of 28 U.S.C. § 2254(e) therefore do not apply, and this Court should remand to the district court for the fact-finding required to determine whether, because of his FASD, Bryant is constitutionally ineligible for execution.

Respectfully submitted August 14, 2024,

John G. Baker
Federal Public Defender for the
Western District of North Carolina

*s/ Gretchen L. Swift*
Gretchen L. Swift
Laura K. McCready
Assistant Federal Public Defenders
FEDERAL PUBLIC DEFENDER
FOR THE WESTERN DISTRICT
OF NORTH CAROLINA
129 West Trade Street, Suite 300
Charlotte, NC 28202
704-374-0720
Gretchen_Swift@fd.org
Laura_McCready@fd.org

*s/ E. Charles Grose, Jr.*
E. Charles Grose, Jr.
GROSE LAW FIRM, LLC
305 Main Street
Greenwood, SC 29646
864-538-4466
charles@groselawfirm.com

Counsel for Appellant

13